David E. Hamilton
140 Cherry St No 388
Hamilton, MT 59840
ph: (406) 375-9382
fax: (406) 363-5234
Plaintiff Pro Se

FILED
BERNARD F. McCARTHY
JUN 08 2006
BANKRUPTCY COURT
by ______
Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MONTANA**

In re

| | |
|---|---|
| **DAVID E HAMILTON,** Debtor. | Case No. **06-60161-RBK** Chapter 7 Bankruptcy Case |
| **DAVID E HAMILTON,** Plaintiff. -vs- **US DEPARTMENT OF EDUCATION and NORTH CAROLINA STATE EDUCATION ASSISTANCE AUTHORITY** Defendants. | Adv No. ______ |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §523(A)(8).**

David E. Hamilton, Debtor and Plaintiff in the above captioned adversary proceeding, represents as follows:

1. David Hamilton and his spouse, Elizabeth Hamilton, filed jointly a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on March 28, 2006. Donald W. Torgenrud Jr. is the duly appointed Chapter 7 trustee. This complaint seeks to determine the dischargeability of three (3) North Carolina PLUS loans (NC PLUS loans) as they present undue hardship for the Plaintiff and his spouse.

2. One of the unsecured debts owing by the Debtor, but not his spouse, and listed on Schedule E – Creditors Holding Unsecured Priority Claims, is comprised of three (3) NC PLUS loans owing to North Carolina State Education Assistance Authority (NCSEAA), reinsured under an agreement with the U.S. Department of Education (USDE).

3. Of these three (3) loans, two (2) were incurred to pay expenses for the Plaintiff's son at the University of North Carolina at Chapel Hill; one (1) was incurred to pay expenses for the Plaintiff's daughter at Converse College. Neither obtained a degree.

4. NCSEAA, as guarantor, purchased all three (3) loans from College Foundation, Inc. (CFI) on January 1, 1991 following Plaintiff's default.

JURISDICTION

5. USDE maintains a mailing address regarding these loans at: Office of Inspector General, 1 World Trade Center, Ste. 2300, Long Beach, CA 90831. NCSEAA maintains a mailing address at 10 T.W. Alexander Drive, PO Box 14002, Research Triangle Park, NC 27709.

6. Jurisdiction exists under 28 U.S.C. §1334. Venue is proper under 28 U.S.C. §1409(a). The District Court has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C. §157(a). This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(I). This adversary complaint is brought pursuant to 11 U.S.C. §523(a)(8).

FIRST CAUSE OF ACTION [11 §523(a)(8)]

7. Plaintiff is indebted to Defendants USDE and NCSEAA in the approximate sum of $32,154.62 for loans made by Defendants' predecessor in interest to Plaintiff. (Exhibit 1.)

8. Plaintiff is the sole signer on the loans. Spouse has no liability.

9. Requiring Plaintiff to try to repay these debts will impose undue hardship on the Plaintiff and his spouse as contemplated under 11 U.S.C. §523(a)(8).

10. Plaintiff is currently sixty-five (65) years old, legally retired, and living with his spouse (also retired) in the center unit of a Hamilton, Montana triplex.

11. **Plaintiff cannot maintain, based on current income and expenses, a minimal standard of living for himself and his spouse if forced to repay any portion of these loans. Plaintiff believes this situation meets the first test in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (1987).**

12. Plaintiff's lifestyle attributes show a near poverty level standard of living. He has no disposable income, no assets that could be sold to repay the loans, and no future inheritance.

13. There have been no changes in Plaintiff's income since filing for bankruptcy on March 28, 2006. It remains as stated on Schedule I. (Exhibit 2.)

14. Plaintiff has, since age 62, received no income other than reduced Social Security income (SSI), having been forced by decreasing physical health and lack of employment to file for SSI before reaching full retirement age. Plaintiff's SSI is cut to 76.7% of full benefits.

15. Plaintiff's annual income is barely adequate. He and spouse comprise a household of two (2), with a combined monthly income of $1,306, an annual income of $15,672. The federal poverty guideline set in January 2006 is $13,200 for a two-person family unit. (Source: http://aspe.hhs.gov/poverty . Federal Register, Vol. 71, No. 15, January 24, 2006, pp.3848-3849.)

16. Plaintiff's expenses increased since filing for bankruptcy. He added $88 monthly Medicare Part B, and $10 for Prescription Drug plans for himself and spouse. Expenses currently stand at $1732, but on September 4, 2006, car payments of $300 will be completed, reducing total monthly expenses to $1432, thus increasing by $98 the total on Schedule J. (Exhibit 3.)

17. The shortfall, as of September 4, 2006, will be $126 monthly. Recent physical examinations show that medical expenses, and that shortfall, can be expected to increase.

18. Plaintiff's living expenses fall well within the published IRS *National Standards for Allowable Living Expenses* provided by the U.S. Trustee Program for bankruptcy petitioners. (Source: http://www.usdoj.gov/ust/eo/bapcpa/bci_data/national_expense_standards.htm . U.S. Trustee Program/Department of Justice, January 31, 2006.)

19. None of his expenses is unreasonable. Plaintiff and spouse have foregone necessities such as medical, vision, and dental care – a situation that is rapidly catching up to them. Both stopped taking prescription medications several years ago, unable to afford them. They live frugally, purchasing at discount stores when possible. A younger or healthier plaintiff might seek part-time work in this situation, but health and age prevent that.

20. Undue financial hardship has already been caused by Defendants' offset of Plaintiff's Social Security benefits, exacerbating his financial duress, causing him to incur credit card debt to meet daily necessities, and hastening instant bankruptcy. (Exhibit 4.)

21. **Three (3) additional sets of circumstances indicate that Plaintiff's state of affairs is likely to persist for a significant portion of the repayment period of the NC PLUS loans, making his future as grim as, or even more grim than the present. Plaintiff believes this fact meets the second test in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (1987).**

22. **Serious medical concerns**: Plaintiff suffers from serious, progressive cardiovascular disease, left leg nerve damage, high blood pressure, increased sensitivity to stress, and other medical concerns that prevent employment and advancement.

23. Plaintiff has a long family history of serious heart disease. His own cardiovascular disease was first diagnosed in 1986, and progressed until, unable to walk 10 feet without pain, he underwent quadruple coronary artery bypass graft surgery (CABG) in March 2000 at age 59.

24. CABG relieved pain, but did not cure Plaintiff's disease. Since CABG, he has experienced increased sensitivity to stress, which produces sudden chest pressure. Blood pressure and lipid levels also concern his physician. This combination of disabling factors makes work-related stress unsustainable and precludes future employment.

> Stress also appears to affect heart disease on a biological level. Stressful daily life situations have been associated with ischemia, or lack of blood and oxygen to the heart. Stress has also been shown to constrict or narrow blood vessels, to alter lipid (cholesterol and triglyceride) levels in the blood and to result in irregular heart rhythms.

(Kristin L. Niekirk, *The Effects of Stress on Heart Health*, Wisconsin Heart and Vascular Clinics, S.C., 2006, http://www.whvc.org/Content/1542 .)

25. Plaintiff believes his left leg suffered nerve damage in CABG, since the leg goes numb after standing for a few minutes. "Nerve damage is not infrequent after cardiac surgery … extremity nerve injuries can include the saphenous, peroneal and the lateral cutaneous nerve of the thigh." (Sohrab Lutchmedial & Mark Smilovitch, *After the Bypass: Keeping Your Patient Healthy*, Perspectives in Cardiology, Vol 13, No5, June/July 1997, http://sprojects.mmi.mcgill.ca/heart/980210SM.html .)

26. Plaintiff's disability to stand without numbness will not improve, and will continue to curb employment and potential earnings.

27. Plaintiff worked only one year after CABG, which is typical for CABG patients. "This study confirms that employment declines after CABG...." (H. C. Smith et al., *Employment Status after Coronary Artery Bypass Surgery,* Circulation, Vol 65, 120-125, 1982, http://circ.ahajournals.org/cgi/content/abstract/65/7/120 .)

28. There is no hope that Plaintiff's cardiovascular disease, left leg nerve damage, high blood pressure, and increased sensitivity to stress will improve, or that his disability to work with this disease and its symptoms will be reversed. The disease will gradually worsen, adding an ever-increasing physical and financial burden as it does so. These conditions will only thwart future employment efforts and hope of financial recovery.

29. Plaintiff's serious physical disabilities are such that excepting the loans from discharge would constitute undue physical, emotional, and mental, as well as financial hardship.

30. **Age factors** negatively impact Plaintiff's earning power, and the years remaining in his work life to allow repayment of the loans are not only limited, but exhausted.

31. Ageism is an inescapable reality in our society. "We're ageist because the society we live in is permeated with ageism. We can no more escape it than we can the chemicals in our food...." (Robert Butler, et al., *Help Stamp Out Ageism*, Network, Vol 1, Issue 2, September/October 1995, pg 14, http://www.graypanthersmetrodetroit.org/Ageism.html .)

32. Ageism, while prohibited by the *Age Discrimination in Employment Act of 1967* (ADEA), becomes widespread by age 65 when one's "work life" is considered over.

> More than 16,500 age discrimination complaints were filed with the Equal Employment Opportunity Commission in 2005… Many people in their 50s and 60s already feel their job is threatened when they are surrounded by young, tech-savvy staff. Oft-used terms such as 'new blood' and 'fresh ideas' don't help, and often end up in age discrimination suits.

(Lisa Biank Fasig, *Age Takes Stage in Discrimination Suits*, Cincinnati Business Courier, March 3, 2006, http://cincinnati.bizjournals.com/cincinnati/stories/2006/03/06/focus1.html?jst=s_cn_hl .)

33. An Economic Policy Institute study and graph note effects of age on employment:

> As workers age, they have greater difficulty in securing and retaining employment. They are more likely to drop out of the labor force and more likely to be unemployed. Men's employment rate reaches a peak level of 89% at age 39, and then drops 29 percentage points by age 61. Between 61 and 65 years of age, male employment rates drops (sic) another 25 percentage points. At age 65, 36% of men are still working. Employment declines for men are greater between age 39 and age 61 than between age 61 and age 65. This suggests that many workers would not be able to find employment for additional years before they hit a higher Social Security retirement age.... A higher retirement age would be a cruel blow to those who have been displaced by a rapidly changing economy and have obsolete skills. (Exhibit 5.)

(Elise Gould, *Many Already Lack a Steady Job before the Social Security Retirement Age*, Economic Snapshots, June 15, 2005, http://www.epinet.org/content.cfm/webfeatures_snapshots_20050615 .)

34. For the past five (5) years, Plaintiff's age has been a limiting factor in efforts to gain employment. His age prevents retraining or relocation also as a means for payment of the loans. Age and its limitations obviously will not decrease, but will increase daily.

35. **A lack of marketable job skills** has long limited Plaintiff's employment efforts. As early as January 1988, a consumer statement sent to credit bureaus noted these. (Exhibit 6.)

36. Plaintiff obtained a Bachelor of Arts degree in 1964 with a degree in business administration / economics, but did not begin a business career upon graduation.

37. Plaintiff worked as a missionary in Japan from 1965 until late 1976.

38. Returning from Japan at age 35, Plaintiff tried to enter the work force just four (4) years prior to men's employment rate peak, 13 years later than most men begin careers. Age and lack of skills prevented normal progression, but he was never able to afford additional schooling.

39. The disabling heart disease and elderly status of Plaintiff, combined with his lack of marketable job skills, create an insurmountable barrier to his ability to repay the loans.

40. Plaintiff did not invite these additional circumstances into his life, and were they within his control, he would change them. He cannot, however, reverse heart disease, make himself younger, or acquire new job skills in senior years. Since all of these will persist and increase until death, Plaintiff's financial situation is highly unlikely to improve in the future, and requirement to repay the NC PLUS loans would thus constitute undue hardship.

41. **Plaintiff made good faith efforts to repay the NC PLUS loans, minimizing expenses, maximizing income, and trying to negotiate with NCSEAA, especially in recent years. Plaintiff believes this meets the third test in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (1987).**

42. The three (3) NC PLUS loans were not for Plaintiff's personal benefit, and he gained nothing from them. They have been in repayment for over 16 years, and differ from student loans, in that consideration was to be given the parent borrower's credit status.

43. Good faith involves all parties to the loans, and each is affected by the others.

> One of the core principles of contracting is that, in the performance of every contract, the parties are obliged to treat each other fairly and in good faith. Importantly, the duty does not have to be expressly stated. It is an implicit part of every contract, arising from fundamental notions of what it means to "contract" with another party.

(Richard Rector, *Good Faith, Bad Faith in Government Contracts*, Washington Technology, April 17, 2000, http://www.washingtontechnology.com/news/15_2/federal/15116-1.html .)

44. Good faith on the part of a lender requires due diligence in checking credit history, and determining credit risk before making a loan. Plaintiff authorized a credit check, and lender performed that check on 8/17/88. (Exhibit 6.)

45. Common sense would dictate denial of the loans, based on that credit check, but CFI staff approved, NCSEAA accepted the approval, and the loans were made. (Exhibit 7.)

46. The *Code of Federal Regulations* at the time of application did not define *acceptable* or *unacceptable credit*, but a later amendment to the Code, carefully defining *adverse credit history*, shows what any ordinarily responsible person thinks concerning credit:

> (C) …the lender must consider each applicant to have an adverse credit history based on the credit report if—
>
> (*2*) The applicant has been the subject of a … bankruptcy discharge … during the five years preceding the date of the credit report.

(Source: http://www.gpoaccess.gov/cfr/index.html , 34 C.F.R. §682.201(b)(C)(2), 2006.)

47. Plaintiff applied for the first loans in August 1988, within the first year after bankruptcy discharge on September 28, 1987. CFI and NCSEAA acted unfairly in making and approving loans in the face of that credit history. By representing that Plaintiff was a good risk, they set him up for repayment failure on these loans. (Exhibit 8.)

48. Plaintiff believes he exercised good faith. He admits that, untaught in the handling of loans, he unwittingly made two errors. Firstly, whatever his initial understanding, as recently as two (2) years ago, he believed he was co-signer to loans signed first by dependents. In a July 22, 2003 letter to NCSEAA, he stated, "I regret that I have not been able to repay my children's student loans for which I also signed." (emphasis added). In February 25, 2004, he wrote to the Department of the Treasury, "I wanted to make you aware of the fact that the claims are for education loans extended to my children…." (emphasis added). (Exhibit 9.) (Exhibit 10.)

49. Secondly, Plaintiff failed to understand the importance of initiating contact with a lender and updating his address. Fully aware he could make no payment, he saw no reason for contact. Even when he did write, he was frustrated, as shown by an August 25, 2003 letter to

NCSEAA: "In one letter you stated that I had 'intentionally ignored your communication' which is not true. Now that I have tried proactively to communicate with you, all I receive from you is a very impersonal payment plan with no accompanying explanation." (Exhibit 11.)

50. Plaintiff worked conscientiously from 1988 to the present, and was never fired from any job, but was hindered at every turn by an unusual succession of factors well beyond his reasonable control. Employers went out of business; moved to new areas; down-sized; closed local offices; etc., leaving him repeatedly unemployed. A graph of his employment history shows very lean years outweighing less lean years. The result was that his salary at any given time must stretch to recuperate from the months without salary. (Exhibit 12.)

51. Plaintiff made payments on the loans as timely, and as long, as possible. In the initial loan repayment year, he paid $1,100 on the $8000 total of the loans. An additional $4000 loan was made at the end of that time, bringing the total to $12,000. Sudden and continuing unemployment made payment impossible after that first year. (Exhibit 13.)

52. Plaintiff's total paid on the loans increased to $2,367 when, from April 2004 through March 2006, an additional $1,267 was offset from his SSI. (Exhibit 1.)

53. From 1988 through the duration of the 1987-1992 recession, Plaintiff sold all but necessary possessions, twice moved to less expensive housing, and concurrently sought new employment, tried to secure business counseling clients, and worked an Amway business.

54. Early 1990, Plaintiff's 20-year old daughter developed repetitive motion syndrome (RMS), which threatened her college major, piano performance. Soon after, Adult Onset Dyslexia seriously hampered all other college studies. Loans against inheritance paid for necessary and costly medical intervention. She eventually had to drop out of college.

55. Early 1991 – At age 50, Plaintiff was unfamiliar with the personal computer (PC), mouse, Windows OS, etc., and had much to learn. An additional loan against inheritance purchased a computer so he could teach himself. Family and friends continued support.

56. Plaintiff's self-taught computer skills helped him acquire spotty employment, but when his parents died, he had to use his remaining inheritance for food and necessities.

57. Ongoing efforts to minimize expenses are demonstrated by Plaintiff's 1999 purchase of a 20-year old, 20-foot motorhome as the sole residence for him and his spouse. He rented an RV lot 25 miles from town, and lived there two years, commuting to work each day.

58. When, after CABG in March 2000, it became more difficult to retain suitable employment, Plaintiff explored the possibility of creating Internet business to increase income.

59. July 2001, Plaintiff and his spouse incorporated Bottomline Impact, Inc. (BII) and its subsidiary, Quiet Impact, Inc. (QII).

60. August 2001, Plaintiff cut expenses approximately 64% by moving from California to Arizona.

61. August 2001 through May 2003, unable to secure employment at age 60, Plaintiff worked hard to grow BII, teaching himself Internet skills that were new and difficult to him.

62. July 22, 2003, Plaintiff wrote to NCSEAA, explaining his dire financial situation and stating that penalties and interest had made the debt overwhelming. He explained his lack of income earning capabilities, and asked if consideration was given hardship cases. (Exhibit 9.)

63. August 2003, Plaintiff cut expenses an additional 4% by moving to Montana.

64. August 2003, Plaintiff acknowledged NCSEAA's letter, which failed to answer questions posed in his letter. "I would love to work with you," he wrote. He offered to do his best, if permitted to pay only principal, to see if he could borrow the money. (Exhibit 11.)

65. In early 2004, Plaintiff remembers talking to an NCSEAA representative by phone in his effort to resolve the problem. Once more, he explained his financial situation and unemployment. When he asked for help, she promised to check and call back. She never did.

66. March 2004, the U.S. Department of the Treasury began to offset Plaintiff's limited SSI. Plaintiff had filed written protest February 25, 2004, explaining SSI was his only income. He tried to resolve the dispute, but USDE, through NCSEAA, offset SSI by $38 monthly in 2004, $59 in 2005, and $92 in 2006 until March 28, 2006 when bankruptcy petition was filed. Every Cost of Living increase went to USDE through NCSEAA. Since each reduction included additional fees, it appears no dent was made in principal. (Exhibit 1.)

67. Presently, Plaintiff continues his work to grow BII to a point where it can afford to pay salary, but it has been unprofitable to date, showing a cumulative net loss of over $15,000 as of the filing of his bankruptcy petition. BII's client of greatest value is currently considering reduction in services, which may make it impossible for BII to continue.

68. Plaintiff did not willfully contrive a hardship to discharge the loans. He worked conscientiously to maximize income and minimize expenses, but has never earned sufficient to make repayment on the loans.

69. Plaintiff sees no realistic hope of being able to repay the loans, and believes estimation of such prospects should be based on "specific articulable facts, not unfounded optimism." *Polleys; Educational Credit Management Corp.* v., 356 F.3d at 1310 (quoting Robert F. Salvin, Student Loans, Bankruptcy, and the Fresh Start Policy: Must Debtors Be Impoverished to Discharge Educational Loans?. 71 Tul. L. Rev. 139, 197 (1996)). http://www.gamb.uscourts.gov/Opinions/Walker/03-52112.pdf

70. Research for this pleading revealed that debtors sometimes are offered, by USDE, a 25-year Income Contingent Repayment Plan (ICRP) or a 10-year Income Sensitive Plan (ISP), but either would constitute undue hardship for Plaintiff.

71. The articulable facts presented in this complaint provide strong evidence that Plaintiff will never earn enough to make even a minimal payment without incurring undue financial hardship. Further, if he lived to the end of a 10-year ISP or 25-year ICRP and the debt was discharged, he would, at age 75 or 90, face tax liability for the current approximate sum of $32,154.62, plus capitalized interest and other fees. Plaintiff believes this ludicrous scenario would cause undue emotional and mental, as well as financial hardship in his closing years.

72. Plaintiff filed for bankruptcy for reasons other than just to discharge his three (3) NC PLUS loans. The loans are part of an overall economic failure.

73. Plaintiff believes that, although Congress has not defined "undue hardship", any adequate definition must take into account the mental, emotional, and physical facets of human life as well as the financial facet.

74. Plaintiff firmly believes, based on the facts presented herein, that requiring repayment of any portion of these loans would place upon him and his spouse undue hardship in all four areas of life throughout their remaining years.

WHEREFORE, the Debtor asks this court to enter an Order declaring the entire debt of the three (3) NC PLUS loans to be fully dischargeable.

Date: June 7, 2006

Plaintiff David E. Hamilton

## PLAINTIFF'S EXHIBITS -- WILL OFFER

Case Name: Hamilton v. US Department of Education and North Carolina State Education Assistance Authority

Case Number: 06-60161

| # | Description | Δ's Objection | Date Offered | Date Admitted | Date Refused | Date Reserved |
|---|---|---|---|---|---|---|
| 1 | NCSEAA statement ending 3/28/2006 | | | | | |
| 2 | Bankruptcy petition schedule I | | | | | |
| 3 | Bankruptcy petition schedule J | | | | | |
| 4 | Department of Treasury notice of offset to SSI | | | | | |
| 5 | Economic Snapshots article with graph | | | | | |
| 6 | Plaintiff's credit report dated 8/17/1988 | | | | | |
| 7 | Plaintiff's applications for 3 NC PLUS loans | | | | | |
| 8 | Plaintiff's 1987 bankruptcy discharge | | | | | |
| 9 | Plaintiff's 7/22/03 letter to NCSEAA | | | | | |
| 10 | Plaintiff's 2/25/04 letter to Dept. of the Treasury | | | | | |
| 11 | Plaintiff's 8/25/03 letter to NCSEAA | | | | | |
| 12 | Graph of Plaintiff's employment history | | | | | |
| 13 | Payment history of 3 NC PLUS loans | | | | | |

NORTH CAROLINA
STATE EDUCATION ASSISTANCE AUTHORITY
Guaranty Agency Services
P.O. Box 14002
Research Triangle Park, NC 27709
Telephone 919-248-4617 or 800-544-1644

Statement for the Period
1/01/1991 to 5/01/2006

DAVID HAMILTON
140 CHERRY ST BOX 388
HAMILTON MT 59840-3517

Account Number
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

| Transaction Date | Effective Date | Transaction Amount | Principal | Interest | Fees | Transaction Type |
|---|---|---|---|---|---|---|
| 4/02/2004 | 4/02/2004 | 38.00 | .00 | 24.80 | 13.20 | Pmt - Fed. Offset |
| 5/11/2004 | 5/11/2004 | 38.00 | .00 | 24.80 | 13.20 | Pmt - Fed. Offset |
| 6/03/2004 | 6/03/2004 | 38.00 | .00 | 24.80 | 13.20 | Pmt - Fed. Offset |
| 7/01/2004 | 7/01/2004 | 38.00 | .00 | 24.80 | 13.20 | Pmt - Fed. Offset |
| 8/03/2004 | 8/03/2004 | 38.00 | .00 | 24.80 | 13.20 | Pmt - Fed. Offset |
| 9/03/2004 | 9/03/2004 | 38.00 | .00 | 24.80 | 13.20 | Pmt - Fed. Offset |
| 9/27/2004 | 9/27/2004 | 38.00 | .00 | 24.80 | 13.20 | Pmt - Fed. Offset |
| 11/03/2004 | 11/03/2004 | 38.00 | .00 | 23.00 | 15.00 | Pmt - Fed. Offset |
| 12/29/2004 | 12/29/2004 | 38.00 | .00 | 23.00 | 15.00 | Pmt - Fed. Offset |
| 2/04/2005 | 2/04/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 3/03/2005 | 3/03/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 4/01/2005 | 4/01/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 5/10/2005 | 5/10/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 6/13/2005 | 6/13/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 6/29/2005 | 6/29/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 8/05/2005 | 8/05/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 9/02/2005 | 9/02/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 10/06/2005 | 10/06/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 11/02/2005 | 11/02/2005 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 1/04/2006 | 1/04/2006 | 59.00 | .00 | 44.00 | 15.00 | Pmt - Fed. Offset |
| 1/31/2006 | 1/31/2006 | 92.00 | .00 | 77.00 | 15.00 | Pmt - Fed. Offset |
| 2/28/2006 | 2/28/2006 | 92.00 | .00 | 77.00 | 15.00 | Pmt - Fed. Offset |
| 3/28/2006 | 3/28/2006 | 92.00 | .00 | 77.00 | 15.00 | Pmt - Fed. Offset |

| Total Applied | | Current Account Balance | |
|---|---|---|---|
| Principal: | .00 | Principal: | 12,002.55 |
| Interest: | 934.60 | Interest: | 20,082.08 |
| Fees: | 332.40 | Fees: | 69.99 |
| Total: | 1,267.00 | Total: | 32,154.62 |

EXHIBIT
1

In re Hamilton, David, Debtor    Case No. ____ (if known)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 7, 11, 12, or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child.

| Debtor's Marital Status: Married | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP: | AGE: |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Retired | Retired |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

| INCOME: (Estimate of average monthly income) | DEBTOR | SPOUSE |
|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (Prorate if not paid monthly.) | $ 0 | $ 0 |
| 2. Estimate monthly overtime | $ 0 | $ 0 |
| 3. SUBTOTAL | $ 0 | $ 0 |
| 4. LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | $ 0 | $ 0 |
| b. Insurance | $ 0 | $ 0 |
| c. Union dues | $ 0 | $ 0 |
| d. Other (Specify): | $ 0 | $ 0 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ 0 | $ 0 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ 0 | $ 0 |
| 7. Regular income from operation of business or profession or firm. (Attach detailed statement) | $ 0 | $ 0 |
| 8. Income from real property | $ 0 | $ 0 |
| 9. Interest and dividends | $ 0 | $ 0 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ 0 | $ 0 |
| 11. Social security or government assistance (Specify): Social Security | $ 842 | $ 464 |
| 12. Pension or retirement income | $ 0 | $ 0 |
| 13. Other monthly income (Specify): | $ 0 | $ 0 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | 842 | 464 |
| 15. TOTAL MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ 842 | $ 464 |
| 16. TOTAL COMBINED MONTHLY INCOME: $ 1306 | $ 1306 | $ 1306 |

(Report also on Summary of Schedules.)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

EXHIBIT 2

In re Hamilton, David, Debtor — Case No. ____________ (if known)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| Item | Amount |
|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ 625 |
| a. Are real estate taxes included? Yes ☐ No ☑ | |
| b. Is property insurance included? Yes ☐ No ☑ | |
| 2. Utilities: a. Electricity and heating fuel | $ 100 |
| b. Water and sewer | $ 35 |
| c. Telephone | $ 45 |
| d. Other | $ 0 |
| 3. Home maintenance (repairs and upkeep) | $ 0 |
| 4. Food | $ 200 |
| 5. Clothing | $ 50 |
| 6. Laundry and dry cleaning | $ 0 |
| 7. Medical and dental expenses | $ 50 |
| 8. Transportation (not including car payments) | $ 35 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ 25 |
| 10. Charitable contributions | $ 0 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | |
| a. Homeowner's or renter's | $ 0 |
| b. Life | $ 0 |
| c. Health | $ 0 |
| d. Auto | $ 81 |
| e. Other Medicare Part B | $ 88 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) (Specify) | $ 0 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | |
| a. Auto | $ 300 |
| b. Other | $ 0 |
| c. Other | $ |
| 14. Alimony, maintenance, and support paid to others | $ 0 |
| 15. Payments for support of additional dependents not living at your home | $ 0 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ 0 |
| 17. Other | $ 0 |
| 18. TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | $ 1634 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME

| | |
|---|---|
| a. Total monthly income from Line 16 of Schedule I | $ 1306 |
| b. Total monthly expenses from Line 18 above | $ 1634 |
| c. Monthly net income (a. minus b.) | $ -328 |

EXHIBIT 3



**DEPARTMENT OF THE TREASURY**
**FINANCIAL MANAGEMENT SERVICE**
**P.O. BOX 1686**
**BIRMINGHAM, AL 35201-1686**

**THIS IS NOT A BILL**

**ATTENTION: YOUR SOCIAL SECURITY BENEFIT PAYMENT MAY BE REDUCED**

01/28/04

DAVID E HAMILTON
140 CHERRY STREET
PMB 388
HAMILTON, MT 59840-3517

Dear DAVID E HAMILTON:

The Federal agency named below notified the U.S. Department of the Treasury's Financial Management Service (Treasury) that you owe that agency a delinquent debt. Federal law (31 U.S.C. § 3716) requires Treasury to reduce the amount of your Social Security benefit payments to pay this debt, a process known as "offset." Beginning no sooner than 03/2004, Treasury will offset up to 15% of each of your monthly Social Security benefit payments until your debt is paid or otherwise resolved. Treasury will not reduce any of your payments to less than $750 for a non-tax debt. Your Social Security benefit payments will be reduced each month unless you contact the following agency and meet their requirements to stop the monthly reductions:

U.S. DEPARTMENT OF EDUCATION
C/O N.C. STATE EDUC. ASSIST. AUTH.
P.O. BOX 14002
RESEARCH TRIANGLE PARK NC 27709

**919-248-4617**
**(800) 544-1644**

Acct Num: NC077343543
TIN Num: 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

The agency has previously sent notice to you at the last address known to the agency. The notice(s) included information on the amount and type of debt you owe, the rights available to you, and a statement of the agency's intent to collect the debt by reducing any Federal payments made to you. The agency submitted your debt to Treasury for collection because you failed to pay or otherwise resolve the debt. The Social Security Administration and Treasury cannot answer your questions about a debt you owe to another Federal agency. Only the agency to which you owe the debt can assist you in resolving it.

Please note that Treasury may reduce your Social Security benefit payments to collect more than one debt. If you owe debts to more than one Federal agency, Treasury will apply the amounts deducted from your Social Security benefit payments to each debt in the order required by law. **IF YOU RECEIVE OTHER FEDERAL PAYMENTS, THEY MAY BE REDUCED TO PAY YOUR DELINQUENT DEBT WITHOUT ADDITIONAL NOTICE.**

Sincerely,

CA Wilson

Charles A. Wilson
Financial Management Service, U.S. Department of the Treasury
(800) 304-3107

EXHIBIT
4

PAYEE NAME: DAVID E HAMILTON
PAYING FEDERAL AGENCY: Social Security Administration
PAYMENT TYPE: EFT
CLAIM ACCT NUM: 077343543 A

PAYEE TIN: 077343543
PAYMENT DATE: 03/2004
BENEFICIARY TIN: 077343543



http://www.epinet.org/content.cfm/webfeatures_snapshots_20050615p

EPI ECONOMIC POLICY INSTITUTE
RESEARCH AND IDEAS FOR WORKING PEOPLE

EPI home
Search
Bookstore
Publications archive
Newsroom
Calendar
About EPI
Contact EPI
Web features
Library
Job postings
Mailing lists
Support EPI

WEB FEATURES
Datazone
Economic Indicators
Issue Guides
Online calculators
Snapshots
Viewpoints
Audio archive

BROWSE OTHER ARTICLES BY
Elise Gould

RELATED PUBLICATIONS
Bush Administration Forces Companies to

Print this page Email this page

# Economic Snapshots

A weekly presentation of downloadable charts and short analyses designed to graphically illustrate important economic issues. *Updated every Wednesday.* [See Snapshots Archive.]

*Snapshot* for June 15, 2005.

## Many already lack a steady job before the Social Security retirement age

In the Social Security debate, some policy makers have suggested raising the retirement age as a way to address the projected long-term gap in Social Security's finances. Those who favor a later retirement age seem to assume that people work right up until they become eligible for early retirement at age 62 or until the "normal retirement age" under Social Security, and then immediately retire. The "normal retirement age" is already in the process of increasing from 65 to 67. The assumption is that raising the retirement age further would induce Americans to continue working and to postpone claiming their benefits until they hit the new, later retirement age. If people behaved this way, it would raise revenue and reduce benefits.

However, as the figure below shows, large percentages of both men and women lose employment before they reach Social Security eligibility. Increasing either the early retirement age or the normal retirement age would put more Americans at risk of poverty and would do nothing to make employment opportunities more available to older Americans.

EXHIBIT
5

Negotiate Worse Benefits

Bush's stealth attack on Social Security

Social Security provides the primary life insurance protection for most children

Saving Social Security with stocks: The promises don't add up

A new Social Security rationale?

Email this page

As workers age, they have greater difficulty in securing and retaining employment. They are more likely to drop out of the labor force and more likely to be unemployed. Men's employment rate reaches a peak level of 89% at age 39, and then drops 29 percentage points by age 61. Between 61 and 65 years of age, male employment rates drops another 25 percentage points. At age 65, 36% of men are still working. Employment declines for men are greater between age 39 and age 61 than between age 61 and age 65. This suggests that many workers would not be able to find employment for additional years before they hit a higher Social Security retirement age.

Women follow the same pattern. The peak employment rate for women is 76% at age 46. By age 61,

their employment rate falls to 42%. Loosely, this means that 34% of women who had worked at some point in their lives were not working in the year before they became eligible for Social Security retirement benefits. As both men and women age, their increasing lack of employment could be involuntary (e.g., their inability to find a suitable job) or voluntary withdrawal from the labor force (e.g., sufficient wealth for reduced labor force attachment or early retirement).

Americans over 45 are disproportionately more likely than their younger counterparts to be among the long-term unemployed (those unemployed for 27 weeks or more). Americans older than 45 make up about 14% of the labor force but 37% of the long-term unemployed.[1] Older workers—even those as young as their late 40s and early 50s—are disproportionately more likely to fall into the ranks of the long-term unemployed.

One possible explanation for lower employment rates for older Americans is age discrimination in hiring practices. Compared to other charges of discrimination collected by the U.S. Equal Employment Opportunity Commission, age discrimination tends to display the strongest counter-cyclical trend.[2] That is, charges of age discrimination fall during good economic times and rise during recessions; more so than discrimination based on race or sex. Companies trying to cut costs in bad economic times will benefit more from laying off older workers, who get paid more than younger, lower paid entry-level workers. About 23% of all discrimination charges in 2004 had an age component, compared to 18% of all charges in 1999.

Because going without work is not an option financially, some seniors are turning to disability claims to fill the financial gap. Rising disability rates may suggest that older Americans who cannot secure employment will be more likely to file for disability. For those motivated to raise the retirement age for budget purposes, the problem here is that one portion of the Social Security trust fund will simply replace another. And, if we loosen disability eligibility rules to cover these older unemployed workers, it will have ripple effects for younger Americans seeking disability benefits, potentially increasing Social Security costs rather than reducing them.

Raising the normal retirement age but not the early retirement age would effectively cause a decline in Social Security benefits for everyone. That might seem reasonable for well-paid professionals who often retire after age 65, but that's not the typical Social Security retiree. A higher retirement age would be a cruel blow to those who have been displaced by a rapidly changing economy and have obsolete skills, or who have struggled with low paying, physically demanding work and can no longer find suitable jobs well before they reach 62.

**References**

1. Andrew Stettner and Sylvia Allegretto. The Rising Stakes of Job Loss: Stubborn long-term joblessness amid falling unemployment rates. May 26, 2005. EPI and NELP Briefing Paper #162.

2. U.S. Equal Employment Opportunity Commission, Charge Statistics, FY 1992-FY 2004. Web site http://www.eeoc.gov/stats/charges.html accessed 6/13/05.

Today's *Snapshot* was written by EPI economist Elise Gould.

Check out the archive for past *Economic Snapshots*.

*Copyright © 2006 by The Economic Policy Institute. All rights reserved.*

Readers may redistribute this material to other individuals for noncommercial use, provided that the text, data, and all HTML code remain intact and unaltered in any way. This article may not be resold, reprinted, or redistributed for compensation of any kind without prior written permission. If you have any questions about permissions, please contact EPI at webmaster@epinet.org.

▶ EPI home

****************************** CBI CONSUMER CREDIT REPORT ******************************
COLLEGE FOUNDATION INC
REF: 00706
****************************************************************************************

SMART.ALX RECORD NUMBER: 155 DATE: 08-17-1988 TIME: 11:05:27

COPY

NM-HAMILTON,DAVID,E,,.
CA-,,,CHARLOTTE,NC,28211.
ID-SSS-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.

* 011 CB CHARLOTTE 1515 MOCKINGBIRD BX 34488 CHARLOTTE NC 28209(704)525-9945

*HAMILTON,DAVID,E,,ELIZABETH L SINCE 01/16/83 FAD 07/14/88 FN-319
5606B,STRAWBERRY HILL,DR,CHARLOTTE,NC,DAT RPTD 07/88
5606,STRAWBERRY HILL,DR APT B,CHARLOTTE,NC,28211,DAT RPTD 04/88
65,PROVIDENCE SQUARE,DR,CHARLOTTE,NC,CRT RPTD 05/88
BDS-05/27/41,SSS-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
01 ES-FNNCL ADMIN,DIRECTIONAL MEDIA ASSOC
02 EF-,GENERAL BUSINESS SERV

*SUM-10/79-06/88,PR/OI-YES,FB-NO, ACCTS:4,HC$379-10709, 4-ONES.
03 01/88 SPECL 805ZS85002 CONSUMER INTERVIEW

****** PUBLIC RECORDS OR OTHER INFORMATION ******
04 05/87 BKRPT 805VF85006, CB8700551 DISCHARGED 09/28/87,JOINT, PERSONAL,DISCHARGED
05 02/85 LIEN 444VC343,B0052P0407,$2738,VF,RELEASED 02/85
**************************************************

*INQS-GULF AM FN 845FM174 07/14/88 BELK CTR 805DC61 05/03/88
IVEYS 805DC1382 04/22/88 MONOGRAM 404FF239 04/21/88
805 CONS COPY 01/15/88 NCNB-CC 805BB35347 01/15/88
LEASCONCPT 805AL85188 11/02/87 SBLVD CHRY 805AN72644 07/29/87
FORD MO CR 805FF5096 07/27/87 TOWN-CNTRY 805AN72582 07/25/87
BAF 805FF10558 05/26/87

| * FIRM/ID CODE | | RPTD | OPND | H/C | TRM | BAL | P/D | CS | MR | ECOA | ACCOUNT NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NCNB | *456BB106 | 06/88 | 02/88 | 7517 | 273 | 7089 | 6543 | I1 | 03 | I | 170140000070685 |
| SEARS | *906DC29 | 02/88 | 10/79 | 379 | | 0 | | R1 | 99 | U | 8663-6481306054459 |
| 30(00)60(05)90(02) | | 12/84-R3,09/84-R5,08/84-R4 | | | | | | | | | DLA 02/88 |
| BAF | *805FF10558/A | 11/87 | 05/87 | 4408 | 183 | 3306 | | I1 | 04 | I | 456323941860 |
| FIRST AGRI | *450BB458 | 01/87 | 08/82 | 10K | 50M | 659 | | I1 | 07 | I | 568040001 |
| 30(03)60(00)90(00) | | 12/86-I2,11/86-I2,06/86-I2 | | | | | | | | | DLA 01/87 |

CONSUMER STATEMENT RPTD 01/88 PURGE 05/97
SPENDING 11 YRS AS A MISSIONARY BROUGHT ME TO JOB MRKT AT ENTRY LEVEL,UNABLE TO SUPPORT MY FAMILY,WITH HELP I SET ABOUT ESTABLISHING MY OWN BUSINESS,AN INITIAL LACK OF FUNDS ON WHICH TO LIVE DURING START UP SET US ON A COLLISION COURSE WITH EVER GROWING INDEBTEDNESS TO KEEP US AND THE BUSINESS ALIVE,I WAS FORCED TO MOVE TO AN AREA OF LOWER COST AND SEEK REG EMP,MY WIFE ALSO WORKED BUT WE NEVER OVER CAME BUSINESS FAILURE AND COULD GAIN RELIEF ONLY THROUGH BANKRUPTCY &

END OF REPORT CBI AND AFFILIATES - 08/17/88

EXHIBIT
6

# Application And Promissory Note For N.C. PLUS Loan To Parent Borrower From College Foundation, Inc. (CFI)

Insured by the North Carolina State Education Assistance Authority

STUDENT AID OFFICE

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines or imprisonment under the United States Criminal Code and 20 U.S.C. 1097.

- Read Instructions for Sections A-1, A-2, B, and E. • Print with pen and press hard.

**SECTION A-1: TO BE COMPLETED BY BENEFITING STUDENT**

1. Student's Full Name (Last, First, M.I., Jr.): Mark David Hamilton
2. Social Security Number: 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
3. Birthdate of Student: 6-21-70
4. U.S. Citizenship Status: a. U.S. Citizen or National [X] b. Eligible Noncitizen Alien ID# [ ] c. Neither "a." nor "b." [ ]
5. Major (Code): 06
6. Academic Period Covered By Loan From (Mo./Day/Yr.) 8/25/88 To (Mo./Day/Yr.) 5/31/89
7. Housing: [ ] With Parents [ ] Campus Housing [X] Off-Campus Housing
8. Enrollment Status: [X] Full-Time [ ] Half-Time [ ] Less Than Half-Time
9. Have you ever failed to repay (defaulted on) any educational loan (if "Yes," attach explanation)? No

**SECTION A-2: PARENT BORROWER'S INFORMATION (ALSO SECTION E)**

11. Last Name, First, M.I., Jr. & 12. Permanent Mailing Address:
Hamilton, David E.
5606B Strawberry Hill Dr.
Charlotte, NC 28211

13. Borrower's Social Security Number: 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
14. Amount Requested: $ 4,000.00

**10. STUDENT CERTIFICATION AND AUTHORIZATION**

I certify under penalty of perjury under the laws of the United States of America that the following is true and correct. The information contained in this form is true, complete, and correct to the best of my knowledge and belief and is given in good faith. I am aware that if I knowingly or willfully embezzle, misapply, steal or obtain by fraud, false statement or forgery any funds, assets, or property under this Program, I shall be subject to a fine of not more than $10,000 or imprisonment for not more than 5 years, or both.

I authorize any school that I may attend to release to the lender, guarantee agency, subsequent holder, U.S. Department of Education, or their agents any requested information pertinent to this application or loan (for example, enrollment status, prior loan history, current address). I also authorize the school, lender, subsequent holder, guarantee agency, or their agents to make inquiries to or respond to inquiries from my parents, my spouse, prior or subsequent lenders or holders, U.S. Department of Education, or their agents about this loan application or documents related to any loan made as a result of this application.

I certify that I do not owe a refund on a Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, or State Student Incentive Grant and am not now in default on any of the following types of loans: Perkins Loan (formerly called National Direct/National Defense Student Loans), Guaranteed Student Loan (including N.C. Insured or Federal Insured Student Loans), PLUS Loan, Supplemental Loans for Students (formerly called ALAS or PLUS Loans to students), Income Contingent Loan or Consolidation Loan.

I have read and understand the terms of this Certification.

Signature (Full Name) of Student: Mark David Hamilton

Today's Date: August 3 1988

**SECTION B: PROMISSORY NOTE FOR NORTH CAROLINA PLUS LOAN (N.C. PLUS)**

I, the undersigned (the borrower), promise to pay to COLLEGE FOUNDATION, INC., the lender, or to a subsequent holder of this Promissory Note all of the principal sum of the loan amount I have requested in Section A-2, item 14 of this application, to the extent it is advanced to me under the program of PLUS Loans insured by the North Carolina State Education Assistance Authority, plus interest on this sum at the applicable variable rate of interest specified on the Disclosure Statement related to this loan and as described on the reverse of this Promissory Note under the heading INTEREST. The variable rate of interest in effect from the date this loan is disbursed until the first day of July following the date this loan is disbursed will be specified on the Disclosure which the lender must provide to me. I will repay this loan in accordance with the terms described on the reverse of this Promissory Note under the heading REPAYMENT. If I fail to pay any of these amounts when they are due, I will also pay all charges and other costs--including attorney's fees--that are permitted by Federal and State law and regulations and are necessary for the collection of these amounts. If this loan is referred for collection to any agency that is subject to the Fair Debt Collection Practices Act, I will pay those collection costs which do not exceed 25 percent of the unpaid principal and accrued interest. My signature certifies that I have read, understood, and agreed to the terms and conditions of this loan and the "Borrower's Certification" printed on the reverse side. I UNDERSTAND THAT THIS IS A PROMISSORY NOTE. I WILL NOT SIGN THIS PROMISSORY NOTE BEFORE READING IT, INCLUDING THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.

Signature (Full Name) of Parent Borrower (Do not print): David Edwin Hamilton (Seal) Today's Date: August 3, 1988

- After completing Sections A, B, and E, send the form to CFI or the school (as instructed by the school).
- Borrower should keep Part 4 (blue copy).
- School should keep Part 3 (yellow copy).

**SECTION C: TO BE COMPLETED BY SCHOOL** • See Instructions on reverse of school's (yellow) copy. • School keeps yellow copy.

15. Name of School and Mailing Address:
STUDENT AID OFFICE
THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL
P.O. BOX 1080
CHAPEL HILL, NORTH CAROLINA 27514

School FICE & Suffix Codes: 2974-00 Telephone Area/Number: (919) 962-8396

16. Loan Period (Mo./Day/Yr.) From 09/01/88 To 05/09/89
17. Beginning Dates (Mo./Day/Yr.) of T... N/A To PLUS Loan
18. AGD (Mo./Yr.): 5/92
19. Grade Level: 1
20. De... St... (D...
22. Cost: 5330
23. Other Aid: 0
24. EFC: N/A To PLUS Loan
25. Maximum PLUS Loan Eligibility

EXHIBIT 7

26. Certification: I have read and understand the terms of the "School Certification" (on reverse of school's copy of Application).

Signature of Designated Financial Assistance Official: Beverly C. Leake Date Certified: 8/16/88

Typed or Printed Name and Title: BEVERLY C. LEAKE, ASST. DIRECTOR OF STUDENT AID

**SECTION D: LENDER'S INFORMATION** 1566046937 A1 807037 Telephone No.: 919/821-4771

Name: College Foundation, Inc.
Address: P.O. Box 12100, Raleigh, N.C. 27605

CFI AUG 17 1988

Amount Approved By CFI $ 4000

Approved By: [signature] Date: 8-25-88

NCSEAA 1300--CFI Form 506 (03/88)

• CFI'S COPY -- PART 1

I understand that the following terms and conditions, as set forth in Federal/State regulations governing the Guaranteed Student Loan Program (GSLP), apply to this loan:

**INSURANCE PREMIUM.** Federal law allows the guarantee agency to collect an insurance premium based on the loan amount. I will pay to the lender an amount equal to the premium that the lender is required to pay to the guarantee agency to obtain insurance coverage on this loan. The Disclosure Statement which the lender will send to me will show the rate and the amount to be deducted from loan proceeds.

**INTEREST.** My loan will bear interest at a variable rate which is not to exceed 12% and which is adjusted annually over the life of the loan. The variable interest rate will be determined in accordance with Federal statute and will be published by the U.S. Secretary of Education annually. My lender will notify me annually of the interest rate which will apply to my loan for each July 1 - June 30 period. The Disclosure Statement which the lender will send to me will show the applicable interest rate for this loan.

Interest accrues from the date the lender disburses this loan, and I am responsible for payment of all the interest that accrues on this loan. Interest on loans in deferment status shall be paid at least quarterly or, if agreed upon by the lender and me, be capitalized. If I decide to choose capitalization, the lender will periodically but no more frequently than quarterly add to the loan the amount accruing for interest; it will cost me more in overall interest but gives me financing if I am unable to pay the interest during the authorized deferment period.

**CAPITALIZATION OF INTEREST.** The lender may add any interest that is not paid when it is due to the unpaid principal balance of this loan, in accordance with Federal/State regulations governing the GSLP.

**ACCELERATION.** At the option of the lender or holder of this Promissory Note, the entire unpaid balance and accrued interest shall become immediately due and payable if (a) I make or have made a false material statement in connection with my application for this loan or (b) I default on this loan.

**REPAYMENT.**

1. By law, the repayment period on this loan begins when the loan is disbursed. The first payment is due within 60 days of disbursement, except that I may be entitled to deferment of principal until a later date (see section DEFERMENT). I will be responsible for payment of all the interest that accrues on this loan.
2. I will repay this loan within 10 years of the date of this Promissory Note over a repayment period that generally lasts at least 5 years but not more than 10 years, except for authorized periods of "deferment" or "forbearance" which are excluded from this 10-year period. Since this loan has a "variable rate" (as described under INTEREST), the amount of the monthly payments required on this loan may be adjusted annually in order to reflect annual adjustments in the interest rate and to assure repayment of the loan within the maximum allowable repayment period. Unless my lender and I agree otherwise, my minimum monthly payment for my (and if applicable, my spouse's) refinanced loan, other PLUS or SLS (ALAS) loans, and loans which I(we) may have as a student under the Guaranteed Student Loan Program must be (1) $50 or (2) the amount which will allow my loan to be paid in full in not less than 5 years nor more than 10 years, whichever is more. The following exceptions to these rules apply:
   - If I request a shorter repayment period, the lender may grant me a shorter period. In that event, I may later choose to have the repayment period extended to 5 years.
   - The lender may require a repayment period shorter than 5 years if this is necessary to ensure that during each year of repayment I--or if both my spouse and I have SLS (ALAS), PLUS, or GSL loans outstanding, we--pay toward principal and interest at least $600 of the unpaid balance of all such loans (plus interest) whichever is less.
   - If I qualify for postponement of my payments during any deferment period described under BORROWER'S RIGHTS in the application booklet or if the lender grants "forbearance," those periods will not be included in the 5- and 10-year periods mentioned above.
3. The particular terms and conditions of repayment that apply to this loan will be set forth in a separate document, known as a Repayment Schedule, that the lender will provide to me.

**REFINANCING.** If I owe for more than one PLUS Loan, upon my request, the lender may combine the loans to allow me to make a single monthly payment of principal and interest; this option which is called "Refinancing to Secure Combined Payment," also provides a 10-year repayment period for the "refinanced" loan which begins on the first day of the repayment period of the most recent included loan. If this loan is made by the current holder of the loan(s) being refinanced in order to obtain a variable interest rate, if required to do so, I will pay a refinancing fee not to exceed $100 to cover the administrative costs of reissuing such a loan(s). I will pay any applicable refinancing fee separately and in advance to my lender. The interest rate will be the weighted average of the rate of all loans to be included.

**PREPAYMENT.** I may, at my option and without penalty, prepay all or any part of the principal of this loan at any time. If I do so, I will be entitled to a rebate of any unearned interest that I have paid.

**LATE CHARGE.** If permitted by State law, the lender may collect from me a late charge if I fail to pay all or a part of a required installment payment within 10 days after it is due or if I fail to provide written evidence that verifies my eligibility to have the payment deferred as described under DEFERMENT in this Note. The late charge may not exceed 6 cents for each dollar of each late installment.

**DEFERMENT.** If I comply with the procedural requirements for requesting deferment (as set forth in the regulations governing the GSLP), I may defer payment of principal on this loan for any of the specified circumstances that apply to me after the repayment period begins. These deferment circumstances are described under BORROWER'S RIGHTS in the application booklet.

To be granted deferment, I must request the deferment and provide my lender with all documentation required to establish my eligibility (as set forth in the regulations governing the GSLP). I must notify my lender when the conditions entitling me to the deferment no longer exist.

**DEFAULT.** "Default" means the failure of a borrower to make an installment payment when due, or to meet other terms of the Note under circumstances where the Secretary or guarantee agency finds it reasonable to conclude that the borrower no longer intends to honor the obligation to repay, provided that this failure persists for 180 days for a loan repayable in monthly installments.

If I default on this loan:

1. The lender may declare the entire unpaid amount of the loan, including interest, immediately due and payable;
2. The lender, holder, or guarantee agency may disclose to schools I have attended (or am currently attending) information about the default; and
3. I will be ineligible to receive assistance from any of the following Federal programs: Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, College Work-Study, State Student Incentive Grant, Perkins Loan (formerly called National Direct/National Defense Student Loans), Guaranteed Student Loans (including Federal Insured Student Loans or N.C. Insured Student Loans), Supplemental Loans for Students (formerly called ALAS or PLUS Loans to students), PLUS Loan, Income Contingent Loan, or Consolidation Loan.

**DISABILITY OR DEATH.** If I become totally and permanently disabled, or if I die, my obligation to pay any amount owed on this loan will be canceled.

**CREDIT BUREAU NOTIFICATION.** Information concerning the amount of this loan and its repayment will be reported to one or more credit bureau organizations.

If I default on this loan, the lender, holder or guarantee agency will also report the default to credit bureau organizations. This may significantly and adversely affect my ability to obtain other credit.

The lender, holder or guarantee agency must notify me at least 30 days in advance that information about the default will be disclosed to credit bureau organizations unless I enter into repayment on the loan within the 30 days.

The lender must provide a timely response to a request from any credit bureau organization regarding objections I might raise with that organization about the accuracy and completeness of information reported about me.

**BORROWER CERTIFICATION AND AUTHORIZATION**

I certify under penalty of perjury under the laws of the United States of America that the following is true and correct. The information contained in this form is true, complete, and correct to the best of my knowledge and belief and is given in good faith. I am aware that if I knowingly or willfully embezzle, misapply, steal or obtain by fraud, false statement or forgery any funds, assets or property under this Program, I shall be subject to a fine of not more than $10,000 or imprisonment for not more than 5 years, or both.

I certify that the total amount of PLUS Loans received on behalf of this student under the Guaranteed Student Loan Program, Title IV, Part B of the Higher Education Act of 1965, as amended (20 USC 1071 et seq.) will not exceed the allowable maximums.

I will use all of the proceeds that I receive from this loan solely for educational purposes for the student named on this Application-Promissory Note form--for tuition and other reasonable and authorized expenses, including room and board, books, supplies, transportation and miscellaneous personal expenses. I understand that I am responsible for immediately repaying to the lender any funds that I receive which cannot reasonably be attributed to meeting educational expenses related to student's attendance at the school certifying the application for this loan. I authorize the school to pay to the lender any refund which may be due me up to the amount of this loan.

I authorize the school to release to the lender, guarantee agency, subsequent holder, U.S. Department of Education, or their agents any requested information pertinent to this loan (for example, enrollment status, address). I also authorize the lender, subsequent holder, guarantee agency, or school to make inquiries to or respond to inquiries from the benefiting student, my spouse, subsequent holder, U.S. Department of Education, or their agents about this loan application or documents related to any loan made as a result of this application. I also authorize CFI to obtain a credit report.

I certify that I do not owe a refund on a Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, or State Student Incentive Grant and am not now in default on any of the following types of loans: Perkins Loan (formerly called National Direct/National Defense Student Loans), Guaranteed Student Loan (including N.C. Insured or Federal Insured Student Loans), PLUS Loan, Supplemental Loans for Students (formerly called ALAS or PLUS Loans to students); Income Contingent Loan or Consolidation Loan.

I acknowledge by my signature in SECTION B that I have received a Statement of Rights and Responsibilities with this application and an exact copy of this Note. I have read both and have raised any questions I had about them.

# Application And Promissory Note For N.C. PLUS Loan To Parent Borrower From College Foundation, Inc. (CFI)

Insured by the North Carolina State Education Assistance Authority

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines or imprisonment under the United States Criminal Code and 20 U.S.C. 1097.

cfi

• Read Instructions for Sections A-1, A-2, B, and E. • Print with pen and press hard.

## SECTION A-1: TO BE COMPLETED BY BENEFITING STUDENT

1. Student's Full Name (Last, First, M.I., Jr.): Hamilton, Debbie Lyn
2. Social Security Number: 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
3. Birthdate of Student: 01-21-70
4. U.S. Citizenship Status: a. U.S. Citizen or National [X] b. Eligible Noncitizen Alien ID# [ ] c. Neither "a." nor "b." [ ]
5. Major (Code): 50
6. Academic Period Covered By Loan From (Mo./Day/Yr.) 9/1/88 To (Mo./Day/Yr.) 5/31/89
7. Housing: [ ] With Parents [X] Campus Housing [ ] Off-Campus Housing
8. Enrollment Status: [X] Full-Time [ ] Half-Time [ ] Less Than Half-Time
9. Have you ever failed to repay (defaulted on) any educational loan (if "Yes," attach explanation)? No

10. STUDENT CERTIFICATION AND AUTHORIZATION

I certify under penalty of perjury under the laws of the United States of America that the following is true and correct. The information contained in this form is true, complete, and correct to the best of my knowledge and belief and is given in good faith. I am aware that if I knowingly or willfully embezzle, misapply, steal or obtain by fraud, false statement or forgery any funds, assets, or property under this Program, I shall be subject to a fine of not more than $10,000 or imprisonment for not more than 5 years, or both.

I authorize any school that I may attend to release to the lender, guarantee agency, subsequent holder, U.S. Department of Education, or their agents any requested information pertinent to this application or loan (for example, enrollment status, prior loan history, current address). I also authorize the school, lender, subsequent holder, guarantee agency, or their agents to make inquiries to or respond to inquiries from my parents, my spouse, prior or subsequent lenders or holders, U.S. Department of Education, or their agents about this loan application or documents related to any loan made as a result of this application.

I certify that I do not owe a refund on a Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, or State Student Incentive Grant and am not now in default on any of the following types of loans: Perkins Loan (formerly called National Direct/National Defense Student Loans), Guaranteed Student Loan (including N.C. Insured or Federal Insured Student Loans), PLUS Loan, Supplemental Loans for Students (formerly called ALAS or PLUS Loans to students), Income Contingent Loan or Consolidation Loan.

I have read and understand the terms of this Certification.

Signature (Full Name) of Student: Debbie Lyn Hamilton

Today's Date: August 8, 1988

## SECTION A-2: PARENT BORROWER'S INFORMATION (ALSO SECTION E)

11. Last Name, First, M.I., Jr. & 12. Permanent Mailing Address:
Hamilton, David E.
5606B Strawberry Hill Dr.
Charlotte, NC 28211

13. Borrower's Social Security Number: 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
14. Amount Requested: $ 4,000.00

## SECTION B: PROMISSORY NOTE FOR NORTH CAROLINA PLUS LOAN (N.C. PLUS)

I, the undersigned (the borrower), promise to pay to COLLEGE FOUNDATION, INC., the lender, or to a subsequent holder of this Promissory Note all of the principal sum of the loan amount I have requested in Section A-2, item 14 of this application, to the extent it is advanced to me under the program of PLUS Loans insured by the North Carolina State Education Assistance Authority, plus interest on this sum at the applicable variable rate of interest specified on the Disclosure Statement related to this loan and as described on the reverse of this Promissory Note under the heading INTEREST. The variable rate of interest in effect from the date this loan is disbursed until the first day of July following the date this loan is disbursed will be specified on the Disclosure which the lender must provide to me. I will repay this loan in accordance with the terms described on the reverse of this Promissory Note under the heading REPAYMENT. If I fail to pay any of these amounts when they are due, I will also pay all charges and other costs--including attorney's fees--that are permitted by Federal and State law and regulations and are necessary for the collection of these amounts. If this loan is referred for collection to any agency that is subject to the Fair Debt Collection Practices Act, I will pay those collection costs which do not exceed 25 percent of the unpaid principal and accrued interest. My signature certifies that I have read, understood, and agreed to the terms and conditions of this loan and the "Borrower's Certification" printed on the reverse side. I UNDERSTAND THAT THIS IS A PROMISSORY NOTE. I WILL NOT SIGN THIS PROMISSORY NOTE BEFORE READING IT, INCLUDING THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.

Signature (Full Name) of Parent Borrower (Do not print): David E. Hamilton (Seal) Today's Date: August 8, 1988

• After completing Sections A, B, and E, send the form to CFI or the school (as instructed by the school).
• Borrower should keep Part 4 (blue copy).
• School should keep Part 3 (yellow copy).

## SECTION C: TO BE COMPLETED BY SCHOOL

• See Instructions on reverse of school's (yellow) copy. • School keeps yellow copy.

15. Name of School and Mailing Address:
CONVERSE COLLEGE
580 E. MAIN ST.
SPARTANBURG, S.C. 29301

School FICE & Suffix Codes: 3431-00 Telephone Area/Number:

16. Loan Period (Mo./Day/Yr.) From 9/13/88 To 5/25/89
17. Beginning Dates (Mo./Day/Yr.) of Terms in Loan Period: N/A To PLUS Loan 9/13/88 2/22/89
18. AGD (Mo./Yr.): 5/91
19. Grade Level: 2
20. Dependency Status (D or I): D
21. AGI: 47,425
22. Cost: 11,400
23. Other Aid: 7,345
24. EFC: N/A To PLUS Loan
25. Maximum PLUS Loan Eligibility: 4,000

26. Certification: I have read and understand the terms of the "School Certification" (on reverse of school's copy of Application).

Signature of Designated Financial Assistance Official: Alfred O. Schmitz Date Certified: 8/9/88

Typed or Printed Name and Title: ALFRED O. SCHMITZ DIR. of FIN. ASSIST.

## SECTION D: LENDER'S INFORMATION

1566046937 A1 807037 Telephone No.: 919/821-4771

Name: College Foundation, Inc.
Address: P.O. Box 12100
Raleigh, N.C. 27605

AUG 12 1988

Amount Approved By CFI $ 4000
Approved By: [initials]
Date: 9/1

NCSEAA 1300--CFI Form 506 (03/88)

•CFI'S COPY — PART 1

I understand that the following terms and conditions, as set forth in Federal/State regulations governing the Guaranteed Student Loan Program (GSLP), apply to this loan:

**INSURANCE PREMIUM.** Federal law allows the guarantee agency to collect an insurance premium based on the loan amount. I will pay to the lender an amount equal to the premium that the lender is required to pay to the guarantee agency to obtain insurance coverage on this loan. The Disclosure Statement which the lender will send to me will show the rate and the amount to be deducted from loan proceeds.

**INTEREST.** My loan will bear interest at a variable rate which is not to exceed 12% and which is adjusted annually over the life of the loan. The variable interest rate will be determined in accordance with Federal statute and will be published by the U.S. Secretary of Education annually. My lender will notify me annually of the interest rate which will apply to my loan for each July 1 - June 30 period. The Disclosure Statement which the lender will send to me will show the applicable interest rate for this loan.

Interest accrues from the date the lender disburses this loan, and I am responsible for payment of all the interest that accrues on this loan. Interest on loans in deferment status shall be paid at least quarterly or, if agreed upon by the lender and me, be capitalized. If I decide to choose capitalization, the lender will periodically but no more frequently than quarterly add to the loan the amount accruing for interest; it will cost me more in overall interest but give me financing if I am unable to pay the interest during the authorized deferment period.

**CAPITALIZATION OF INTEREST.** The lender may add any interest that is not paid when it is due to the unpaid principal balance of this loan, in accordance with Federal/State regulations governing the GSLP.

**ACCELERATION.** At the option of the lender or holder of this Promissory Note, the entire unpaid balance and accrued interest shall become immediately due and payable if (a) I make or have made a false material statement in connection with my application for this loan or (b) I default on this loan.

**REPAYMENT.**

1. By law, the repayment period on this loan begins when the loan is disbursed. The first payment is due within 60 days of disbursement, except that I may be entitled to deferment of principal until a later date (see section DEFERMENT). I will be responsible for payment of all the interest that accrues on this loan.
2. I will repay this loan within 10 years of the date of this Promissory Note over a repayment period that generally lasts at least 5 years but not more than 10 years, except for authorized periods of "deferment" or "forbearance" which are excluded from this 10-year period. Since this loan has a "variable rate" (as described under INTEREST), the amount of the monthly payments required on this loan may be adjusted annually in order to reflect annual adjustments in the interest rate and to assure repayment of the loan within the maximum allowable repayment period. Unless my lender and I agree otherwise, my minimum monthly payment for my (and if applicable, my spouse's) refinanced loan, other PLUS or SLS (ALAS) loans, and loans which I(we) may have as a student under the Guaranteed Student Loan Program must be (1) $50 or (2) the amount which will allow my loan to be paid in full in not less than 5 years nor more than 10 years, whichever is more. The following exceptions to these rules apply:
   - If I request a shorter repayment period, the lender may grant me a shorter period. In that event, I may later choose to have the repayment period extended to 5 years.
   - The lender may require a repayment period shorter than 5 years if this is necessary to ensure that during each year of repayment I--or if both my spouse and I have SLS (ALAS), PLUS, or GSL loans outstanding, we--pay toward principal and interest at least $600 of the unpaid balance of all such loans (plus interest) whichever is less.
   - If I qualify for postponement of my payments during any deferment period described under BORROWER'S RIGHTS in the application booklet or if the lender grants "forbearance," those periods will not be included in the 5- and 10-year periods mentioned above.
3. The particular terms and conditions of repayment that apply to this loan will be set forth in a separate document, known as a Repayment Schedule, that the lender will provide to me.

**REFINANCING.** If I owe for more than one PLUS Loan, upon my request, the lender may combine the loans to allow me to make a single monthly payment of principal and interest; this option which is called "Refinancing to Secure Combined Payment," also provides a 10-year repayment period for the "refinanced" loan which begins on the first day of the repayment period of the most recent included loan. If this loan is made by the current holder of the loan(s) being refinanced in order to obtain a variable interest rate, if required to do so, I will pay a refinancing fee not to exceed $100 to cover the administrative costs of reissuing such a loan(s). I will pay any applicable refinancing fee separately and in advance to my lender. The interest rate will be the weighted average of the rate of all loans to be included.

**PREPAYMENT.** I may, at my option and without penalty, prepay all or any part of the principal of this loan at any time. If I do so, I will be entitled to a rebate of any unearned interest that I have paid.

**LATE CHARGE.** If permitted by State law, the lender may collect from me a late charge if I fail to pay all or a part of a required installment payment within 10 days after it is due or if I fail to provide written evidence that verifies my eligibility to have the payment deferred as described under DEFERMENT in this Note. The late charge may not exceed 6 cents for each dollar of each late installment.

**DEFERMENT.** If I comply with the procedural requirements for requesting deferment (as set forth in the regulations governing the GSLP), I may defer payment of principal on this loan for any of the specified circumstances that apply to me after the repayment period begins. These deferment circumstances are described under BORROWER'S RIGHTS in the application booklet.

To be granted deferment, I must request the deferment and provide my lender with all documentation required to establish my eligibility (as set forth in the regulations governing the GSLP). I must notify my lender when the conditions entitling me to the deferment no longer exist.

**DEFAULT.** "Default" means the failure of a borrower to make an installment payment when due, or to meet other terms of the Note under circumstances where the Secretary or guarantee agency finds it reasonable to conclude that the borrower no longer intends to honor the obligation to repay, provided that this failure persists for 180 days for a loan repayable in monthly installments.

If I default on this loan--

1. The lender may declare the entire unpaid amount of the loan, including interest, immediately due and payable;
2. The lender, holder, or guarantee agency may disclose to schools I have attended (or am currently attending) information about the default; and
3. I will be ineligible to receive assistance from any of the following Federal programs: Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, College Work-Study, State Student Incentive Grant, Perkins Loan (formerly called National Direct/National Defense Student Loans), Guaranteed Student Loans (including Federal Insured Student Loans or N.C. Insured Student Loans), Supplemental Loans for Students (formerly called ALAS or PLUS Loans to students), PLUS Loan, Income Contingent Loan, or Consolidation Loan.

**DISABILITY OR DEATH.** If I become totally and permanently disabled, or if I die, my obligation to pay any amount owed on this loan will be canceled.

**CREDIT BUREAU NOTIFICATION.** Information concerning the amount of this loan and its repayment will be reported to one or more credit bureau organizations.

If I default on this loan, the lender, holder or guarantee agency will also report the default to credit bureau organizations. This may significantly and adversely affect my ability to obtain other credit.

The lender, holder or guarantee agency must notify me at least 30 days in advance that information about the default will be disclosed to credit bureau organizations unless I enter into repayment on the loan within the 30 days.

The lender must provide a timely response to a request from any credit bureau organization regarding objections I might raise with that organization about the accuracy and completeness of information reported about me.

---

**BORROWER CERTIFICATION AND AUTHORIZATION**

I certify under penalty of perjury under the laws of the United States of America that the following is true and correct: The information contained in this form is true, complete, and correct to the best of my knowledge and belief and is given in good faith. I am aware that if I knowingly or willfully embezzle, misapply, steal or obtain by fraud, false statement or forgery any funds, assets or property under this Program, I shall be subject to a fine of not more than $10,000 or imprisonment for not more than 5 years, or both.

I certify that the total amount of PLUS Loans received on behalf of this student under the Guaranteed Student Loan Program, Title IV, Part B of the Higher Education Act of 1965, as amended (20 USC 1071 et seq.) will not exceed the allowable maximums.

I will use all of the proceeds that I receive from this loan solely for educational purposes for the student named on this Application-Promissory Note form--for tuition and other reasonable and authorized expenses, including room and board, books, supplies, transportation and miscellaneous personal expenses. I understand that I am responsible for immediately repaying to the lender any funds that I receive which cannot reasonably be attributed to meeting educational expenses related to student's attendance at the school certifying the application ... the school to pay to the lender any refund which may be due me up to the amount of this loan.

I authorize the school to release to the lender, guarantee agency, subsequent holder, U.S. Department of Education, or their agents any requested information pertinent to this loan (for example, enrollment status, address). I also authorize the lender, subsequent holder, guarantee agency, or school to make inquiries to or respond to inquiries from the benefiting student, my spouse, subsequent holder, U.S. Department of Education, or their agents about this loan application or documents related to any loan made as a result of this application. I also authorize CFI to obtain a credit report.

I certify that I do not owe a refund on a Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, or State Student Incentive Grant and am not now in default on any of the following types of loans: Perkins Loan (formerly called National Direct/National Defense Student Loans), Guaranteed Student Loan (including N.C. Insured or Federal Insured Student Loans), PLUS Loan, Supplemental Loans for Students (formerly called ALAS or PLUS Loans to students), Income Contingent Loan or Consolidation Loan.

I acknowledge by my signature in SECTION B that I have received Statement of Rights and Responsibilities with this application and an exact copy of this Note; I have read both and have raised ... questions I had about them.

RECEIVED SCHOLARSHIPS STUDENT AID AUG 31 1989

# Application And Promissory Note For PLUS Loan From College Foundation, Inc. (CFI)

Insured by the North Carolina State Education Assistance Authority

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines or imprisonment under the United States Criminal Code and 20 U.S.C. 1097.

cfi

- Read instructions for SECTIONS A-1, A-2, B, and E.
- Print with pen and press hard.

## SECTION A-1: TO BE COMPLETED BY BENEFITING STUDENT

1. Student's Full Name (Last, First, M.I., Jr.): Hamilton, Mark D.

2. Social Security Number: 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

3. Birthdate of Student: 06/21/70

4. U.S. Citizenship Status
   - a. U.S. Citizen or National [X]
   - b. Eligible Noncitizen Alien ID# [ ]
   - c. Neither "a." nor "b." [ ]

5. Major (Code): 06

6. Academic Period Covered By Loan: From (Mo./Day/Yr.) 08/25/89 To (Mo./Day/Yr.) 05/31/90

7. Housing: [ ] With Parents [ ] Campus Housing [X] Off-Campus Housing

8. Enrollment Status: [X] Full-Time [ ] Half-Time [ ] Less Than Half-Time

9. Have you ever failed to repay (defaulted on) any educational loan (if "Yes," see Instructions)? No

10. STUDENT CERTIFICATION AND AUTHORIZATION

I certify under penalty of perjury under the laws of the United States of America that the following is true and correct. The information contained in this form is true, complete, and correct to the best of my knowledge and belief and is given in good faith. I am aware that if I knowingly or willfully embezzle, misapply, steal or obtain by fraud, false statement or forgery any funds, assets, or property under this Program, I shall be subject to a fine of not more than $10,000 or imprisonment for not more than 5 years, or both.

I authorize any school that I may attend to release to the lender, guarantee agency, subsequent holder, U.S. Department of Education, or their agents any requested information pertinent to this Application or loan (for example, enrollment status, prior loan history, current address). I also authorize the school, lender, subsequent holder, guarantee agency, or their agents to make inquiries to or respond to inquiries from my parents, my spouse, prior or subsequent lenders or holders, U.S. Department of Education, or their agents about this loan Application or documents related to any loan made as a result of this Application.

I certify that I do not owe a refund on a Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, or State Student Incentive Grant and am not now in default on any of the following types of loans: Perkins Loan (formerly called National Direct/National Defense Student Loans), Stafford Loan (including Guaranteed and N.C. Insured Student Loans), Federal Insured Student Loan, PLUS Loan, Supplemental Loans for Students (formerly called ALAS or PLUS Loans to students), Income Contingent Loan, or Consolidation Loan.

I have read and understand the terms of this Certification.

Signature (Full Name) of Student: Mark Donald Hamilton

Today's Date: 08/24/89

## SECTION A-2: PARENT BORROWER'S INFORMATION (ALSO SECTION E)

11. Last Name, First, M.I., Jr. & 12. Permanent Mailing Address:
Hamilton, David E.
1431 Thermal Road
Charlotte, NC 28212

13. Borrower's Social Security Number: 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

14. Amount Requested: $ 4,000.00

## SECTION B--PROMISSORY NOTE FOR PLUS LOAN UNDER THE NORTH CAROLINA INSURED STUDENT LOAN PROGRAM

I, the undersigned (the borrower), promise to pay to COLLEGE FOUNDATION, INC., the lender, or to a subsequent holder of this Promissory Note all of the principal sum of the loan amount I have requested in SECTION A-2, item 14 of this Application, to the extent it is advanced to me under Part B, Title IV of the Higher Education Act of 1965 as amended (20 USC 1071 et seq.) and insured by the North Carolina State Education Assistance Authority, plus interest on this sum at the applicable variable rate of interest specified on the Disclosure Statement related to this loan and as described on the reverse of this Promissory Note under the heading INTEREST. The variable rate of interest in effect from the date this loan is disbursed until the first day of July following the date this loan is disbursed will be specified on the Disclosure which the lender must provide to me. I will repay this loan in accordance with the terms described on the reverse of this Promissory Note under the heading REPAYMENT. If I fail to pay any of these amounts when they are due, I will also pay all charges and other costs--including attorney's fees--that are permitted by Federal and State law and regulations and are necessary for the collection of these amounts. If this loan is referred for collection to any agency that is subject to the Fair Debt Collection Practices Act, I will pay those collection costs which do not exceed 25 percent of the unpaid principal and accrued interest. My signature certifies that I have read, understood, and agreed to the terms and conditions of this loan and the "Borrower's Certification" printed on the reverse side. I UNDERSTAND THAT THIS IS A PROMISSORY NOTE. I WILL NOT SIGN THIS PROMISSORY NOTE BEFORE READING IT, INCLUDING THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.

Signature (Full Name) of Parent Borrower (Do not print): David Edwin Hamilton (Seal) Today's Date: 08/24/89

- After completing SECTIONS A, B, and E, send the form to CFI or the school (as instructed by the school).
- Borrower should keep Part 4 (blue copy).
- School should keep Part 3 (yellow copy).

## SECTION C: TO BE COMPLETED BY SCHOOL

- See Instructions on reverse of school's (yellow) copy.
- School keeps yellow copy.

15. Name of School and Mailing Address:
OFFICE OF SCHOLARSHIPS AND STUDENT AID
THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL
P.O. BOX 1080
CHAPEL HILL, NORTH CAROLINA 27514

16. Loan Period (Mo./Day/Yr.): From 08/31/89 To 05/08/90

17. Beginning Dates (Mo./Day/Yr.) of Terms in Loan Period: 8/31/89 1/16/90

School FICE & Suffix Codes: 2974 00

Telephone Area/Number: (919) 962-8396

18. AGD (Mo./Yr.): 5/92

19. Grade Level: 2

20. Dependency Status (D or I): D

21. Income: 50,738

22. Cost: 5820

23. Other Aid: 0

24. EFC: N/A To PLUS Loan

25. Maximum PLUS Loan Eligibility: 4000

26. Certification: I have read and understand the terms of the "School Certification" (on reverse of school's copy of Application).

Signature of Designated Financial Assistance Official: Beverly C. Leake

Typed or Printed Name and Title: BEVERLY C. LEAKE ASST. DIRECTOR OF STUDENT AID

Date Certified: 10/5/89

## SECTION D: LENDER'S INFORMATION

1566046937 A1 B07037

Telephone No.: 919/821-4771

Name: College Foundation, Inc.
Address: P.O. Box 12100
Raleigh, N.C. 27605-2100

OCT - 6 1989

Amount Approved By CFI: $ 4000

Approved By: SAT

Date: 89-10-10

NCSEAA 1300--CFI Form 506 (12/88)

PART 1--LENDER'S COPY

Pay to the order of the party identified as the owner of this note on the attached approval-disclosure document, without recourse, as of the date of this note

[illegible] premium that the lender is [illegible] the guarantee agency to obtain insurance coverage [illegible] loan [illegible] Statement which the lender will send [illegible] amount [illegible] be deducted from loan proceeds.

[illegible]

All rights, title, and interest of the owner and holder hereby transferred to the North Carolina State Education Assistance Authority without recourse by College Foundation, Inc., acting as agent for the owner of this note.

By [signature] Date 9-27-90

Assistant Secretary

[illegible] The following exceptions to these rules apply: [illegible] shorter repayment period, the lender may grant me a shorter [illegible] have the repayment [illegible]

The lender may require a repayment period shorter than 5 years if this is necessary to ensure that during each year of repayment I, or if both my spouse and I have SLS (ALAS), PLUS, or Stafford Loans (GSLs) outstanding, we pay [illegible] unpaid balance of all such [illegible]

[illegible] during any deferment period. [illegible]

[illegible] which is called "Refinancing to Secure [illegible] Payment" also [illegible] first day of the repayment period of the most recent included loan. The interest rate will be the weighted average of the rate of all loans to be included.

PREPAYMENT. I may, at my option and without penalty, prepay all or any part of the principal of this loan at any time. If I do so, I will be entitled to a rebate of [illegible] unearned interest that I have paid.

LATE CHARGES. If permitted by State law, the lender may collect from me a late charge if I fail to pay all or a part of a required installment payment within 10 days after it is due or if I fail to provide written evidence that verifies my eligibility to have the payment deferred as described under DEFERMENT in this Note. The late charge may not exceed 6 cents for each dollar of each late installment.

DEFERMENT. If I comply with the procedural requirements for requesting deferment (as set forth in the regulations governing the Program), I may defer payment of principal on this loan for any of the specified [illegible] repayment period begins. [illegible] described under Borrower's Rights in the [illegible] deferment, I must request the deferment and provide my lender with all documentation required to establish my eligibility (as set forth in the regulations governing the Program). I must notify my lender when the conditions entitling me to the deferment no longer exist.

ACCELERATION. At the option of the lender or holder of this Promissory Note, the principal amount and accrued interest shall become immediately due and payable if (a) I make or have made a false [illegible] in connection with the Application for this loan, (b) I fail to qualify for all or a portion of this loan, or (c) I default on this loan.

DEFAULT. "Default" means the failure of a borrower to make an installment payment when due, or to meet other terms of the Note under circumstances where the Secretary or guarantee agency finds it reasonable to conclude that the borrower no longer intends to honor the obligation to repay, provided that this failure persists for 180 days for a loan repayable in monthly installments. If I default on this loan—

1. The lender may declare the entire unpaid amount of the loan, including interest, immediately due and payable;
2. The lender, holder, or guarantee agency may disclose to schools I have attended (or am currently attending) information about the default; and
3. I will be ineligible to receive assistance from any of the following Federal programs: Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, College Work-Study, State Student Incentive Grant, Perkins Loan (formerly called National Direct/National Defense Student Loans), Stafford Loan (formerly called Guaranteed Student Loans or GSLs), Supplemental Loans for Students (formerly called ALAS or PLUS loans to students), PLUS Loan, Income Contingent Loan, or Consolidation Loan.

DISABILITY OR DEATH. If I become totally and permanently disabled, or if I die, my obligation to pay any amount owed on this loan will be canceled.

CREDIT BUREAU NOTIFICATION. Information concerning the amount of this loan and its repayment will be reported to one or more credit bureau organizations. If I default on this loan, the lender, holder or guarantee agency will also report the default to credit bureau organizations. This may significantly and adversely affect my ability to obtain other credit. The lender, holder or guarantee agency must notify me at least 30 days in advance that information about the default will be disclosed to credit bureau organizations unless I enter into repayment on the loan within the 30 days. The lender must provide a timely response to a request from any credit bureau organization regarding objections I might raise with that organization about the accuracy and completeness of information reported about me.

[illegible]

[illegible] under the laws of the United States of America [illegible]

I authorize the school to release to the lender, guarantee agency, subsequent holder [illegible]

[illegible] of PLUS Loans [illegible]

CHAPEL HILL, NORTH CAROLINA 27514

I certify that I do not owe a refund on a Pell Grant (formerly called Basic Grant), Byrd Scholarship, Supplemental Educational Opportunity Grant, or State Student Incentive Grant and am not now in default on any of the following types of loans: Perkins Loan (formerly called National Direct/National Defense Student Loans), Stafford Loan (including Guaranteed and FFC-Insured Student Loans), Federal Insured Student Loan, PLUS Loan, Supplemental Loans for Students (formerly called ALAS or PLUS Loans to students), Income Contingent Loan or Consolidation Loan.

I acknowledge by my signature [illegible] that I have received a Statement of Rights and Responsibilities with this Application [illegible] read both and have raised any questions I had about them.

[illegible] attendance at the school certifying the application for this loan. I authorize the school to pay to the lender any refund which may be due me up to the amount of this [illegible]

U.S. BANKRUPTCY COURT FOR WESTERN DISTRICT OF N.C.
Charles R. Jonas Bldg., 401 W. Trade St., Charlotte, N.C. 28202

In Re a Petition for Relief under Chapter 7 of Title 11, U.S. Code, filed by or against the below-named Debtor(s) on May 26, 1987:

DEBTOR : David Edwin Hamilton of 65 Providence Square Drive, Charlotte, NC 28226, SSAN: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

JT. DEBTOR: Elizabeth Louise Hamilton, SSAN: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

[ ]

CASE NO. 87-00551-BKC-MRW

FILED
U.S. BANKRUPTCY COURT
SEP 28 1987
MARY CATHERINE HOLCOMB, CLK
WESTERN DISTRICT OF NC
BY ______ DEPUTY

ORDER AND NOTICE BY THE COURT

DISCHARGE OF DEBTOR

It appearing from the record that the above-named debtor is entitled to a discharge, IT IS ORDERED:

1. The debtor is released from all personal liability for debts existing on the date of commencement of this case, or deemed to have existed on such date pursuant to Section 348(d) of the Bankruptcy Code (Title 11, United States Code).

2. Any existing judgment or any judgment which may be obtained in any court with respect to debts described in paragraph 1 is null and void as a determination of personal liability of the debtor, except:

a. Debts determined nondischargeable by the Bankruptcy Court pursuant to Section 523(a)(2), (4), and (6) of the Bankruptcy Code; and

b. Debts which are nondischargeable pursuant to Section 523(1), (3), (5), (7), (8), and (9) of the Bankruptcy Code.

3. This order does not affect any pending complaint to have a debt declared nondischargeable pursuant to Section 523(a)(2), (4), and (6) of the Bankruptcy Code, nor does it prohibit filing of a complaint under Section 523(a)(1), (3), (5), (7), (8), and (9) of the Bankruptcy Code.

4. All creditors are prohibited from attempting to collect any debt that has been discharged in this case.

5. By virtue of Section 525 of the Bankruptcy Code, no government unit or private employer may terminate the employment of or discriminate with respect to employment against the debtor solely because relief was sought in the Bankruptcy Court.

Dated: SEP 28 1987

Marvin R. Wooten

EXHIBIT 8

2200 N Delaware Dr #85
Apache Junction, AZ 85220

**David E Hamilton**

# Memo

Computer Copy

**To:** NC State Education Assistance Authority

**From:** David Hamilton

**Date:** 7/22/03

**Re:** Your letter of July 8, 2003

---

**TO WHOM IT MAY CONCERN:**

I regret that I have not been able to repay my children's student loans for which I also signed. I have not intentionally ignored your communication. But with all the penalty and interest that has been added over the years, it has become too overwhelming to even consider how I might be able to go about paying them off.

I have not been employed since August 2001, and since I just turned 62 I have recently begun to collect reduced social security benefits. But that is going to the IRS for taxes owed in 1999 (over $11,000) so it will be awhile before that income will be available.

I have no equity in assets. We live in a mobile home for which I still owe over $47,000 – which is more than its assessed value. And I owe approximately $10,000 on my automobile – and that too is probably more than its market value. I'm afraid the future does not look that bright from a financial standpoint.

It does weigh heavily on my mind, and I sometimes lie awake wondering what I could do to take care of this obligation. But the indebtedness is too great, and the income earning capabilities are not there – so I always come up empty.

I would certainly like to put this behind me. Is there ever any consideration give for hardship cases? If there were any way to minimize or eliminate this obligation, it would certainly be greatly appreciated.

Thanks again for your consideration.

Sincerely,

EXHIBIT
9

140 Cherry Street #388
Hamilton MT 59840
Tel: (406) 375-9382
Email: hamiltondavideli@qwest.net

**David E Hamilton**

# Memo

**To:** Department of the Treasury

**From:** David Hamilton

**Date:** 2/25/04

**Re:** Reduction of Social Security

---

**FINANCIAL MANAGEMENT SERVICE:**

Attached is the notice I received from your department regarding the intent to reduce my social security payments beginning in the month of March to satisfy the claims of the US Department of Education.

I wanted to make you aware of the fact that the claims are for education loans extended to my children, and although I am trying to make arrangements with NC State Education Assistance Authority to repay those loans, we have not yet come to an agreement.

Meanwhile, of the $788 I receive from Social Security each month, I am already paying $300 of that monthly to the Internal Revenue Service for taxes owed in 1999. Because of the installment agreement, they have not attached our account, but my social security is deposited directly into Desert Schools Federal Credit Union in Phoenix, AZ and I write a check to the IRS monthly in the amount of $300 in accordance with the installment agreement (see attached).

That already reduces the net balance left to $488 per month, and that is our only source of income at the present time. I would like to request that there be no further reduction until we are able to fulfill the installment agreement that we have already reached with the Internal Revenue Service. We will continue to work with the US Department of Education, and if they are willing to eliminate penalty and interest, we will try to borrow the principal from family members and bring that dispute to a conclusion as well.

Thank you for your consideration. Let me know if there is any other information you require.

[signature]

COPY
EXHIBIT
10

2200 N Delaware Dr #85
Apache Junction, AZ 85220

**David E Hamilton**

# Memo

Computer Copy

**To:** NC State Education Assistance Authority

**From:** David Hamilton

**Date:** 8/25/03

**Re:** D Number 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

---

**TO WHOM IT MAY CONCERN:**

Apparently no one really read the last letter I sent you (see attached copy) – or if they did, they really did not give much time or personal attention to address it. The only reply I received was a payment plan which I did not request, and one which I could not begin to meet for reasons I have already stated.

In one letter you stated that I had "intentionally ignored your communication" which is not true. Now that I have tried pro-actively to communicate with you, all I receive from you is a very impersonal payment plan with no accompanying explanation.

My question was – "Is there ever consideration given for hardship cases? If there were any way to minimize or eliminate this obligation, it would certainly be appreciated." To this I received no reply.

I would love to work with you – but as long as the debt stays at nearly $30,000 with penalty and interest accruing, there is really no incentive to make a single payment – because the payment itself would probably not meet the penalty and interest.

If all penalties and interest from the beginning could be waived and not continue to accrue, and a payment plan could be arranged that would take care of it over a period of 5 years, I would certainly do the best I could to see if I could borrow the money or take a small job that would at least meet those payments. I would be willing to commit to up to $12,000 in that manner.

But as it stands, I am not prepared to begin making payments that I know I will not be able to continue or complete. If you are willing to compromise on your part, for my part I am willing to cooperate to my greatest ability.

Sincerely,

EXHIBIT
11

# Timeline of Plaintiff's Employment History
# Since Receiving NC PLUS loans

◎ = employed ● = unemployed

| | | |
|---|---|---|
| DMA | Directional Media Associates | Charlotte, North Carolina |
| LC | Lausanne Committee | Charlotte, North Carolina |
| GBS | General Business Services | Honolulu, Hawaii |
| ISI | International Students Inc | Colorado Springs, Colorado |
| MEI | Magnetic Engineering, Inc. | Manitou Springs, Colorado |
| HS | Homeleigh School | Masterton, New Zealand |
| RS | Reikorangi School | Waikanae, New Zealand |
| ICI | In Color, Inc. | Santa Barbara, California |
| PCI | PhotoCard, Inc. | Santa Barbara, California |
| JGI | Jaqua Girls, Inc. | Santa Barbara, California |

5/24/06
14:55:37 BMCPHAIL

COLLEGE FOUNDATION INC
Payment History: 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

PYMTHST
1

| Br Name Last | Br Name First | SSN | Ln Num | Group ID | Effective Date | Principal Balance After Payment | Applied Principal | Applied Interest | App Fees | Applied Refund | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HAMILTON | DAVID | 077343543 | 1 | | 88/10/19 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 88/10/19 | .00 | 16.05 | 11.45 | .00 | .00 | 27.50 |
| | | | 2 | | 88/10/19 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 88/10/19 | .00 | 1.17 | 26.33 | .00 | .00 | 27.50 |
| | | | | | | | | | | Pymt | 110.00 |
| | | | 1 | | 88/11/18 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 88/11/18 | .00 | 21.80 | 5.70 | .00 | .00 | 27.50 |
| | | | 2 | | 88/11/18 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 88/11/18 | .00 | 21.78 | 5.72 | .00 | .00 | 27.50 |
| | | | | | | | | | | Pymt | 110.00 |
| | | | 1 | | 88/12/21 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 88/12/21 | .00 | 18.43 | 9.07 | .00 | .00 | 27.50 |
| | | | 2 | | 88/12/21 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 88/12/21 | .00 | 18.40 | 9.10 | .00 | .00 | 27.50 |
| | | | | | | | | | | Pymt | 110.00 |
| | | | 1 | | 89/02/21 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 89/02/21 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |

EXHIBIT
13

5/24/06
14:55:37 BMCPHAIL

COLLEGE FOUNDATION INC
Payment History: 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

PYMTHST
2

| Br Name Last | Br Name First | SSN | Ln Num | Group ID | Effective Date | Principal Balance After Payment | Applied Principal | Applied Interest | App Fees | Applied Refund | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HAMILTON | DAVID | 077343543 | 1 | | 89/02/21 | .00 | 15.08 | 12.42 | .00 | .00 | 27.50 |
| | | | 1 | | 89/02/21 | .00 | 27.50 | .00 | .00 | .00 | 27.50 |
| | | | 2 | | 89/02/21 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 89/02/21 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 89/02/21 | .00 | 15.04 | 12.46 | .00 | .00 | 27.50 |
| | | | 2 | | 89/02/21 | .00 | 27.50 | .00 | .00 | .00 | 27.50 |
| | | | | | | | | | | Pymt | 220.00 |
| | | | 1 | | 89/04/28 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 89/04/28 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 89/04/28 | .00 | 9.63 | 17.87 | .00 | .00 | 27.50 |
| | | | 1 | | 89/04/28 | .00 | 27.50 | .00 | .00 | .00 | 27.50 |
| | | | 1 | | 89/04/28 | .00 | 27.50 | .00 | .00 | .00 | 27.50 |
| | | | 1 | | 89/04/28 | .00 | 27.50 | .00 | .00 | .00 | 27.50 |
| | | | 2 | | 89/04/28 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 89/04/28 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 89/04/28 | .00 | 9.57 | 17.93 | .00 | .00 | 27.50 |
| | | | 2 | | 89/04/28 | .00 | 27.50 | .00 | .00 | .00 | 27.50 |

5/24/06
14:55:37 BMCPHAIL

COLLEGE FOUNDATION INC
Payment History: 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

PYMTHST
3

| Br Name Last | Br Name First | SSN | Ln Num | Group ID | Effective Date | Principal Balance After Payment | Applied Principal | Applied Interest | App Fees | Applied Refund | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HAMILTON | DAVID | 077343543 | 2 | | 89/04/28 | .00 | 27.50 | .00 | .00 | .00 | 27.50 |
| | | | 2 | | 89/04/28 | .00 | 27.50 | .00 | .00 | .00 | 27.50 |
| | | | | | | | | | | Pymt | 330.00 |
| | | | 1 | | 89/08/11 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 89/08/11 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 89/08/11 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 1 | | 89/08/11 | .00 | 1.21 | 26.29 | .00 | .00 | 27.50 |
| | | | 2 | | 89/08/11 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 89/08/11 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 89/08/11 | .00 | .00 | 27.50 | .00 | .00 | 27.50 |
| | | | 2 | | 89/08/11 | .00 | 1.10 | 26.40 | .00 | .00 | 27.50 |
| | | | | | | | | | | Pymt | 220.00 |
| | | | | | | | | | | TOTAL | 1,100.00 |